All right. Our second case for today is United States v. Morrow, No. 22259. And we will hear first from Mr. Levin. Good morning, Your Honors. Joshua Levin on behalf of Defendant Appellant Kashawn Morrow, and may it please the Court. We have raised four arguments on appeal today, but I'd like to focus on two of them. First, why the 924-0 conviction should be vacated, and second, why the evidence is insufficient to sustain the 924-C convictions on Counts 2 and 4. I'd like to begin with the 924-0 conviction, which is for conspiring to use a firearm during a crime of violence. That conviction on Count 8 must be vacated because it is predicated on the Hobbs Act conspiracy that was charged in Count 7. And it is undisputed that Hobbs Act conspiracy is not a crime of violence, and thus cannot... Why was it, Mr. Levin, why was it predicated on Count 7? It's predicated on Count 7 for a number of reasons, Your Honor, based on the undisputed, or I'm sorry, based on the consistent indicators in the record, based on the text and the structure of the indictment, as well as based on the government's routine practice at the time. But that routine practice doesn't make any difference, right? They could have proceeded to trial on just Count 8 by itself. Counts 1 through 7 out of the indictment, they could have proceeded to trial on Count 8 and obtained a conviction on Count 8. So Count 8 was not deficient on its face, right? It's true, Your Honor, that the government could have proceeded on Count 8 alone, but our argument is not based on what the government could have done. Our argument is based on what the record and the structure of the indictment shows the government, in fact, chose to do in this case. And what the record consistently shows is that the record is that the government chose to proceed by using the conspiracy offense that was charged in Count 7 as the predicate for Count 8. The district court, for example, expressly stated at sentencing that Count 8 is predicated on the robbery offense, quote, charged in Count 7. And when the district court said that, the government never objected, never attempted to correct the record. And that's because the district court was accurately articulating the government's view that the conspiracy in Count 7 was the predicate for Count 8. And it's not just the robbery to be the predicate act for the charge in Count 8 that the government would have had to separately charge that Ohio robbery? No, Your Honor, that is not our argument. This court made clear in the Davila case that that is not required. So the government, we are not saying that the predicate was not, can't be, we're not saying that the predicate can't be substantive robbery simply because it wasn't separately charged in the indictment. What we're saying... Okay, so I understand your argument now that they proceeded, your argument is that the government proceeded and tried this case as if the conspiracy was the predicate. As you know, we're reviewing this for plain error because that was not objected to below. And your client, when he testified, admitted on the stand that he had committed the robbery in Troy, Ohio. And during closing argument, I don't know if you argued the case or not, but closing argument, the lawyer who argued for him told the jury, you don't have to worry about Count 7, Count 8, we're not contesting that. So given that we are here on plain error review, and given that your client admitted and said he was taking responsibility for the robbery in Ohio, how can you meet the Your Honor, we meet the plain error standard because it is absolutely clear at this point that conspiracy to commit Hobbs Act robbery is not a crime of violence. And it is absolutely clear in looking at the record, the structure, consistent with the text of the indictment, that there was only one offense that everyone below understood as the predicate. And that was the conspiracy offense charged in Count 7. Actually, that was less clear to me. I agree with you that the district court's discussion of this is a muddle. But on the other hand, as Judge St. Eve says, we're here on plain error review. Count 7 was alluding to the Ohio robbery. The indictment as a whole is very clear that there were a number of Hobbs Act robberies that could have been predicates for Count 8. I'm not aware of any separate charging requirement that the indictment was defective for not saying that. So even if you said it was an error, and even if you said that to the extent one might think that somebody was trying to say conspiracy was a crime of violence, that's plain. But where is the profound negative impact on the judicial system when it's absolutely clear that there are predicate acts that would have qualified? Your Honor, there are predicate acts that could have qualified if we could go back in time, perhaps, and do the indictment differently or the proceedings differently. Well, it's not the indictment. I thought you agreed we didn't have to do the indictment differently. Am I wrong? Well, Your Honor, the structure and the text of the indictment both point to the same conclusion, which is that the predicate is Count 7, and that's consistent with what the party has understood below. But it never says that in so many words. Your Honor, all that the indictment says in the one sentence of Count 8 which sets forth the crime of violence predicate is the generic term robbery. So that certainly does not specify that substantive robbery was the predicate. Well, that's not true. I'm sorry. No, I was just saying there's nothing wrong with that. That's perfectly fine. And the indictment says a little bit more than that. It says, in furtherance of that conspiracy, one or more co-conspirators committed the overt acts of casing a cellular phone retail store in Richmond, Indiana, and or the armed robbery of a cellular phone retail store in Troy, Ohio. That language is specifically in the indictment. And during the arguments before the jury, the prosecutor talked about the fourth robbery, the Troy, Ohio robbery, when talking about this count. That's correct, Your Honor. But that last sentence is the overt act element of the crime, which is completely separate from the crime of violence element of the crime. So the fact that that was listed in the indictment as the overt act does not tell us that the robbery is what the parties understood the predicate offense to be. Let me read it right before. That's a fair argument. Right before that sentence, it charges conspired to use a firearm during and in relation to a crime of violence for which the person may be prosecuted in a court of the United States to wit robbery. It doesn't say to wit conspiracy. It says to wit robbery. And then it goes on to include the language that I talked about before. Yes, Your Honor. But elsewhere in the indictment, the indictment itself uses the single word robbery to actually refer to conspiracy to commit robbery, which is exactly what's happening in count eight. So if we look at count seven in the indictment, which is the conspiracy to commit robbery, the bold underlined title of count seven, which is the conspiracy offense, is interference with commerce by robbery. It uses the term robbery question that I asked a moment ago. Let's assume you're accurate about everything you're saying. We're here on plain air review. Given that your client admitted to the Ohio robbery, and given that I think we can all agree that that Ohio, I know you're preserving your argument on crime of violence, but under our current case law, we can all agree that that Ohio robbery was did this affect your client's substantial rights or constitute a miscarriage of justice if your client admitted on the stand that he committed that Ohio robbery? Because Your Honor, this court has made clear that a legally unauthorized conviction is a conviction that must be corrected on plain error review. And in this case, the record, the structure, the text of the indictment all show that the predicate here is in fact not a qualifying predicate, which makes this conviction not authorized by law. If I may turn to the insufficiency of the evidence, Your Honors, for the 924C charges on counts two and four, that's the first and second robberies, the government had to prove beyond a reasonable doubt that the weapon Mr. Morrow's firearm. Now, in most 924C cases, as Your Honors well know, there's no serious dispute about the firearm element. But in this case, the undisputed evidence showed that at the time of the robberies, Mr. Davis had an airsoft pistol, which is a replica handgun, similar to a BB gun, that is intentionally designed to look just like a real firearm. So my problem with this part of your argument is not only the fact that there are the photographs in the record from the actual robberies that seem to indicate, I guess I'm particularly looking at Government Exhibit 3, for example. A rational jury could find that that was the real gun, it wasn't the airsoft. And there's testimony, you know, a military veteran is one of them. It seems like a jury question, and the jury found that it was a real gun. Your Honor, the key thing that is missing here from even the military veteran eyewitness is some detailed description of the weapon. And that's what the eyewitness... Again, on plain air review, and even if we weren't, given the, as Judge Wood just pointed out, the photos from the footage of the robbery, the testimony of the eyewitnesses that it looked like a real gun, including the Army, Mr. Penthing, who had experience with firearms, the testimony of the victims, the picture from Mr. Davis's cell phone, the Smith & Wesson magazine that was found at Morrow's apartment. Where in the law does it say that you have to give a detailed description in order to establish that there's a firearm used, especially when we're on plain air review? Well, in the Lawson case, the witness there was able to describe the exact model and caliber number of the firearm that she saw. And critically, in that case, there was no evidence whatsoever to support the notion that the weapon in question was anything other than a firearm. And that was sufficient evidence, but the court didn't say that was essential evidence. Not in so many words, Your Honor, but the court pointed that out specifically in reaching its holding, that the evidence there was sufficient. And here, there is undisputed evidence showing that the weapon in question may not have been a real firearm, and that was not even present in the Lawson case. I would at this point reserve the remainder of my time for rebuttal. Thank you. That is fine. Mr. McGrath. You need to unmute, Mr. McGrath. Thank you, Your Honors. My name is Jason McGrath, and I represent the United States of America in this matter. As the court has stated during the course of the argument, we're here on plain air review, and nothing identified in Mr. Morrow's brief has identified a plain error worthy of remand. Mistaken language in a pre-sentence report. Just to reconfirm, Mr. McGrath, the government is conceding that we need to fix the restitution order for the March 30 robbery. Yes, that is correct, Judge. That property was kept by the government for the proceedings and should have returned, and we couldn't identify whether or not an applicable comparable payment could have been made, so we do concede that issue. Does the government still have that property, Mr. McGrath? No. I actually learned in preparation for the argument that the property was returned to the owner and some salvage value was obtained. I believe it was somewhere in the vicinity of as far as what restitution would be appropriate, but the victim did get the property back. Okay. Now, in reference to the plain error review for this particular type of case, there's nothing. The only error that we've been able to identify in the appellant's brief is stated was the district court's characterization of count seven as being related to count eight and the pre-sentence report's similar characterization. However, there's nothing in our jurisprudence that would allow such a mistaken statement, an error, even if we assumed without deciding it was an error, to override a properly instructed jury's verdict. The legally operative aspects of this case are the indictment, the elements instructions that the jury received, the evidence that was presented, and the arguments of counsel. I have a fundamental disagreement with the appellant counsel's... How are the jury instructions helpful here, Mr. McGrath? The jury instruction number 26 in particular sets forth the elements of the conspiracy, but it doesn't tell the jury or direct the jury to a particular underlying crime of violence. Judge, that's correct, but previous instruction, and forgive me, I don't have the number, is that the jury was instructed on the elements of the crime of robbery under United States Code section 1951, the Hobbs Act, and they were given the elements there for counts one, three, five, and seven of the indictment, and listed all the appropriate elements as it pertains to robbery. So the jury was properly instructed on that, but I'm not sure how for the 924-0 charge, how those instructions necessarily assist in your point. Well, I think the conspiracy, as pointed out earlier, the conspiracy aspect of it is another element when we're talking about the overt acts, and the crime of violence itself, as was fleshed out during the course of the trial, was the actual robbery, and robbery itself was defined in the elements. So I think, and forgive me if I'm not answering your question, Your Honor, but I think that does point out that the jury did have a good, sound understanding of what robbery meant, and applied it to the elements as they received in the indictment, and issued their appropriate verdict. Mr. McGrath, do you agree, this circuit has not addressed the question yet, but the other circuits that have have all come out unanimously, do you agree that conspiracy to commit a Hobbs Act robbery would not qualify as a crime of violence? I felt that I did have to make that concession in my brief, and we've seen that sort of play out in the district courts in my district, in the Southern District of Indiana, where judges have found that. It's a difficult argument to go against, as far as whether or not the conspiracy can qualify as a crime of violence. I would say, to answer your question, no, it would not be, but ultimately, that's not what count eight rests on, and that's what our position would be in that respect, but I do appreciate the notion. Mr. Morrow, in his brief, was correct about the jurisprudence that, since Davis, have led to believe that conspiracy on Hobbs Act is not a crime of violence, and even before Davis, this court found the residual clause of 924c3 to be unconstitutional in the Cardania case, so conspiracy was already on pretty tenuous ground at the time this case was indicted, and that's why it was structured the way it was. I disagree with Appellant Counsel, as far as how this indictment is structured. It's very clearly structured, when you look at counts one, three, and five, two, four, and six, that they directly pair with each other, and they directly reference the other, but when you get into counts seven through nine, there is no such language about that, because it's not based on a conspiracy. The crime of violence is the actual robbery, and that got fleshed out throughout the entire trial. The opening statement, counsel for the government talked about the robbery that occurred in Ohio. The defense said in the opening statement and closing arguments that they're taking responsibility for it. Mr. Morrow conceded it on the stand. He had a co-defendant who testified and conceded it on the stand. The government presented evidence from the actual victim of that crime. The parties stipulated that that business was engaged in interstate commerce, advising the jury that that was basically a Hobbs Act robbery, similar to those that occurred in Indiana, for which we did have jurisdiction. Simply, we just did not have the venue to charge that Ohio robbery, and that's ultimately why it was structured the way it was, but it's not done the same way as the Indiana robberies are. So, touching on the sufficiency aspect, your honors, looking at the standard of review for sufficiency, and again, being plain error, the appellant has not shown that there is a manifest miscarriage of justice here. When we look at what was presented to the jury, as court knows, it gives full play to the trier facts termination, looks at the evidence in the light most favorable to the government, and there's no reweighing of the evidence unless there is that manifest miscarriage of justice, and if there's a reasonable basis in the record, then the court will affirm the verdict. So here, there's more than sufficient evidence, and appellant's counsel cited Lawson, and we discussed Lawson in our briefs. Lawson was a single eyewitness testifying, with particularity about the firearm being used, but it was still a single eyewitness, and that witness conceded on cross-examination that the firearm could have been a well-made replica. By making that concession, that could have put some doubt in the jury's mind in that that the firearm was not real, but it didn't work, and the jury decided against Lawson, and Lawson made very clear language about that. The witness's testimony was sufficient for a rational juror to find beyond a reasonable doubt that the object used was, in fact, a firearm. The jury was free to credit the witness's testimony and discredit the defense's attempts to show that it was a well-made replica, and here, the government presented more than just several witnesses' testimony about the firearm, besides victims from the second robbery and the third robbery who professed and testified under oath about demonstrable knowledge of firearms. We also had the photograph that was taken from Mr. Morrow's apartment, where the co-defendant was sitting next to a gun that substantially matched what was seen in the robberies. Firearm accessories that fit the type of gun that was found next to the co-defendant firearm magazine was found in the defendant's apartment. There were no BB gun or airsoft or any other paraphernalia or documentation about that found in the defendant's apartment. I think what was most telling is that they had failed to articulate that in their statements, their custodial interviews. Mr. Morrow had stated... Let me pause there. Mr. Levin said that it's uncontested that Mr. Morrow had the airsoft from a time prior to these robberies going forward. Is there evidence that makes that clear, or is it possible he got the airsoft after the robberies, one or more? I'm not... Based on the testimony that was offered by the defense in their case in chief, even then, it's not entirely clear when they got it. The implication and the direct testimony was that that specific airsoft gun was used in those robberies. Now, I don't know when exactly in time that receipt would have occurred, but for the purposes of the case and what the jury was left to decide was if that was the actual gun that they had used during the course of these robberies. The government presented the evidence that I was detailing as far as how there was evidence to support that it was a real firearm, how there was an absence of evidence other than the testimony and actual physical piece, the airsoft toy that was submitted as evidence. And where I'd left off was the defense statement when Mr. Morrow had stated that there were no bullets in the gun. The appellant wishes to characterize that as his way of saying that it was an airsoft toy, but that's, in my opinion, a butchering of the English language. If one were to say that it was a fake gun, they would say it was a fake gun. The agents testified in their combined experience that no one ever failed to volunteer that. That was always the first thing done. And Mr. Morrow did typically what you would see in a custodial interview in mitigating his conduct. I mean, he said there were no bullets in the guns and nobody could get hurt, but that's not the same in any way, shape or form as saying it's a fake gun. That's entirely different. And a person who actually did use a fake gun or knew that a fake gun was used would say that. And the jury heard all that and they had the right to consider what Mr. Morrow's testimony was, particularly in light of the other evidence that was received. And I think most notably, once the government put sufficient evidence into the record to support that it was a real firearm, the defense theory about what the actual firearm was proven false at trial with photographic evidence. And I think Mr. Morrow's big disadvantage in the case was that he proceeded to a joint trial with Mr. Davis. Mr. Davis conceded that on his cross-examination that it was basically not the same gun. But when you look at the exhibits that were proffered, the defense exhibit had a clearly sort of squared off trigger guard as well as a black barrel. And when you look at the surveillance photographs, I believe it's government's exhibits three and six, you see 16, excuse me, respectively, you see a rounded trigger guard and you see a silver barrel. There's physically incomparable items. So the jury saw all that, understood that they were the triers of fact, and then they made the decision to find against Mr. Morrow and Mr. Davis on that point. And there was more than sufficient evidence to support it. So I think the totality of what was presented by the government and what was ultimately disproven, as far as the defense theory was concerned, shows that there was sufficient evidence. It meets the Lawson standard and it's more than sufficient under plain error review, which we have here. There was no miscarriage of justice in this case. So ultimately, Judge, we would ask that the court affirm all the convictions. 924C offenses are crimes of violence as established well by our precedent and the entire circuits within the United States. The 924O conviction was predicated upon a valid and proven crime of violence. The jury was given proper instructions, legally operative and unchallenged indictment, given sufficient evidence, and both defendants conceded that a robbery occurred. Thank you very much for your time, Your Honor. I yield the rest. Thank you. Anything further, Mr. Levin? Yes, Your Honor. Thank you. Counsel said, going back to the 924O issue, opposing counsel said that the jury had a good sound understanding of what the predicate for count eight was, but in fact, there is nothing from the trial record that shows that the jury had an understanding that substantive robbery not charged in the indictment was the predicate for count eight. As Judge St. Eve asked opposing counsel about, the jury instructions, in fact, make no mention of this. And as I mentioned earlier, the indictment, in fact, throughout the text of 924O, in count seven, it's using that term robbery to refer to the conspiracy, which is exactly what the term robbery in count eight is doing. Now, with respect to the sufficiency of the evidence, Your Honors, opposing counsel stated that because Mr. Morrow did not affirmatively, voluntarily, with essentially flashing lights around it, say in his initial interview that they used a fake gun, that that supports the conviction in this case. But Mr. Morrow explained in his trial testimony exactly why he wasn't more vocal about it. And that's because at the time, he did not understand that there was a distinction legally in terms of how he would be prosecuted between a replica of a gun and a real firearm. And I think that that trial testimony maps onto reality. The government's level of sophistication that's completely unrealistic for a non-lawyer, uneducated defendant without counsel present in interrogation to know that if he would have been clearer about the fact that this was an intentionally designed replica, that it would affect the way that he was prosecuted. We would ask that the judgment below be reversed. Thank you. Thank you very much. And you were appointed, I believe, Mr. Levin, is that correct? Yes, Your Honor. The court very much appreciates your help to your client and to the court. It's very important for us, for people to take these appointments. And thanks, of course, as well to Mr. McGrath. So we will take this case under advisement.